Milligan, J.,
delivered the opinion of the Court.
In 1865, Augustus Watson and John P. Watson, for and on behalf of themselves and others, owners of the *65 steamer, Bostona, conveyed the same, with her engine, tackle and furniture, in trust, to the complainant, W. R. Moore, to secure the payment of certain promissory notes, made by A. A. Watson, John P. Watson, and others, owners of the steamer, Bostona, with power in the trustee, on default of payment of any of the notes, to take possession of the boat, and sell her for cash at public Sale.
The notes were not paid as stipulated, and the bill alleges, the steamer was about to be removed beyond the jurisdiction of the Court; and, therefore, the trustee filed his attachment and injunction bill, to subject the steamer, her engine, tackle, etc., to the satisfaction of the trust debts, as well such as were due, as those not due.
The bill was filed on the 17th of October, 1865, and no answer has been put in. On the 4th of November, 1865, all the parties to this cause, as well as those interested in other cases pending against the same defendants, entered into an agreement, by which it was stipulated, that the boat, and, its appendages, be sold, by the Master, for one-third cash in hand, and the remainder on a credit of four, eight and twelve months. This agreement was confirmed by the Chancellor, and the Master directed to sell the property, as stipulated in the agreement.
In obedience to the agreement, and order of the Court, the Master, on the 25th day of November, 1865, after having given notice, as directed in the decree, proceeded to expose the steamer, and her appendages, to sale; and when the biddings had reached the sum of *66 $5,200, the sale was stopped by the intervention of the complainant’s solicitor, and the fact reported by the Master to the Court. Whereupon, the Chancellor, in vacation, on the application of the parties, and by their consent, directed, as the steamer, Bostona, tackle, and other property attached, were in a perishable condition, that they be sold without delay. The terms of the sale prescribed in this decree, were the same as those fixed by the parties, in the agreement previously made.
Pending these preliminary steps in the cause, other parties, by petition, interposed, and were made parties to this suit; and afterwards, on the 9th of January, 1866, the Master proceeded, under the interlocutory order of the Chancellor, to expose the boat, and its engine, tackle, etc., to sale, and struck off and sold the same to Dan. Able and Michael Pyne, for the sum of $2,800. The purchasers at once complied with the terms of the sale; and afterwards, on the 22d of January, 1866, upon the application of one of the trust creditors, the biddings were opened; and after repeated advances, the purchasers, Able and Pyne, were reported to have advanced on their original bid, to $3,850, and at that sum, were declared the purchasers of the property. To this report there were no exceptions, and the same was regularly confirmed by the Chancellor, on the 2d of February, 1866. Three days thereafter, J. T. Watson presented his petition, praying the Court to set aside the decree of confirmation, and again to re-open the biddings, or to direct a new sale.
In the petition, it is alleged, that Jamés Watson, who, it appears, was the highest bidder at the first sale, *67 which was stopped by complainant’s solicitor, after tbe bidding bad reached the sum of $5,200, was ready to comply with the terms of the sale, and take the boat at that sum of $5,500. The Chancellor set aside the order of Court, made at the same term, confirming the Master’s report of sale to Able and Pyne, and directed that the biddings be again opened, and that James Watson’s bid of $5,500, be received as an advanced bid on the boat. Erom this deeree, Able and Pyne appealed in error to this Court.
Under this state of facts, the question presented, is, whether or not, after confirmation of the sale, the order of confirmation was properly set aside, and the biddings re-opened ? The settled rule of law in this State, seems to be, that, after confirmation, which is the completion of the sale, the purchaser is entitled to a conveyance of the property sold; and no advance of the price bid, however large, without more, is sufficient to justify the Chancellor in setting aside the sale, or re-opening the biddings: McMinnis’ Legatees vs. Joshua Pipps’ Administrator, 3 Sneed, 196; Coffin vs. Corruth, 1 Coldwell, 194; 2 Dan. Ch. P., 1470-1.
Rut, while this rule obtains in cases where the advance on the bid is the only ground relied on for setting aside the sale, or re-opening the biddings, it is not applicable in cases in which accident, mistake or fraud, intervenes. They render void, or at least voidable, the sale itself; and whenever they appear, and especially if the purchaser is in any way complicated with them, a Court of Equity will not hesitate to set aside the confirmation, and re-open the biddings.
*68 But, in our practice, in cases in which the sale has been confirmed, the purchase money paid, and the term closed, the sale, after confirmation, will not be set aside, unless the grounds upon which the application is made, be set out in an original bill, and the opposite party has had an opportunity of admitting or denying by answer, plea or demurrer.
In this case, the purchase money had not been wholly paid, nor was the term at which the confirmation of the sale was had, expired. The record was still under the control of the Court, and he could, at his discretion, upon sufficient cause shown, change, alter or modify his own decree, during the term. The application to set aside the order of confirmation, was, by petition, under oath; .and while it does not, in terms, charge fraud upon the complainant’s solicitor, or the purchasers, it alleges, that the former stopped the first sale, and that thereby, great injury and irreparable loss, resulted to the owners of the boat.
Without discussing the authority of the complainant’s solicitor, to stop a sale during its progress, made under an agreement of all the parties, and directed by the Chancellor, it is enough for all the purposes of this case, to say, that the record discloses no ground or reason, whatever, upon which the progress of the first sale, was arrested by the complainant’s attorney. The sale, so far as we can see from the record, was being conducted with fairness, and the biddings had advanced to a point, when the sale was stopped, beyond which the parties seem never to have been able to extend it. The last bid, before the attorney of the complainant *69 interposed to arrest it, appears to have been $6,200; while at the subsequent sale, made within twenty days thereafter, the same property, without the interposition of any one, was struck off at $2,800, and afterwards, by advanced bids, made by consent, raised to $3,800, and, by agreement of the attorneys, reported to the Chancellor, and confirmed to Able and Pyne, at that sum.
We have no reason to believe any actual fraud was intended by this proceeding; but in the absence of a satisfactory reason for it, and, especially, when it is coupled with the fact alleged in the petition,. that the complainant’s solicitor was also the attorney of Pyne, and of the purchasers, we are forced to hold, that the effect of it, however well intended by the attorney, operated as a fraud and injury upon the owners of the boat, and fully justified the Chancellor in setting aside the order of confirmation, and re-opening the biddings.
The decree of the Chancellor will be affirmed, and the cause remanded.